**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THEODORE MILES, Appellant, | ) | |
| v. | ) | No. 06-1275 (CKK) |
| INTERNAL REVENUE SERVICE, Appellee. | ) | |

**APPELLEE INTERNAL REVENUE SERVICE'S BRIEF**

JENNIFER L. VOZNE
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6555
Facsimile: (202) 514-6866

*Counsel for the Internal Revenue Service*

# TABLE OF CONTENTS

Table of Contents ........ i

Table of Authorities ........ ii

Standard of Review ........ 1

Statement of the Case ........ 1

Statement of Facts ........ 3

Federal Tax Liabilities ........ 3

Preparation of the Proof of Claim & Amended Proof of Claim ........ 5

Bankruptcy Court's Findings of Fact and Conclusions of Law ........ 6

Summary of the Argument ........ 6

Argument ........ 7

**I. The bankruptcy court properly held that the debtor bore the burden of proof to establish that the proof of claim was incorrect, that he was entitled to an abatement of the failure to file a return penalties, and that he did not meet these burdens.** ........ 7

**II. The bankruptcy court correctly determined that debtor failed to show that the penalties should be abated.** ........ 10

**A. The bankruptcy court correctly determined that debtor failed to show that the failure to file penalties should be abated.** ........ 10

**B. Debtor did not seek relief from the estimated tax penalties.** ........ 13

**III. Debtor failed to identify a constitutional due process violation.** ........ 14

Conclusion ........ 15

## STANDARD OF REVIEW

Findings of fact shall not be set aside by the district court unless they are clearly erroneous. *Internal Revenue Service v. District of Columbia (In re WPG, Inc.)*, 282 B.R. 66, 68 (D.D.C. 2002). "A finding is clearly erroneous when, although there is evidence to support it the reviewing court on the evidence is left with the definite and firm conviction that a mistake has been committed. As the Seventh Circuit memorably explained, '[t]o be clearly erroneous, a decision must ··· strike us as wrong with the force of a five week old, unrefrigerated dead fish.'" *Id.* (internal citations omitted). But questions concerning the application of controlling law are reviewed *de novo*. *Id.* at 68. "The burden of proof is on the party that seeks to reverse the Bankruptcy Court's holding. That party must show that the court's holding was clearly erroneous as to the assessment of the facts or erroneous in its interpretation of the law and not simply that another conclusion could have been reached." *Id.* at 68 (citing *In re Ford Johnson*, 236 B.R. 510, 518 (D.D.C. 1999) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985))).

A determination of what elements are required to establish reasonable cause is a question of law subject to *de novo* review, while the determination of what elements are present in a particular case is a question of fact subject to review for clear error. *See United States v. Boyle*, 469 U.S. 241, 249, n. 8 (1985).

## STATEMENT OF THE CASE

1. On October 25, 2004, the Internal Revenue Service filed a proof of claim for debtor's unpaid pre-petition tax liabilities in the amount of $73,783.44, representing secured ($68,101.04) and unsecured general ($5,632.40) claims.

2. On February 7, 2005, the Internal Revenue Service filed an amended proof of claim for debtor's unpaid pre-petition tax liabilities in the amount of $73,783.44, representing secured ($36,062.81) and unsecured general ($37,720.63) claims for debtor's

unpaid federal individual income tax liabilities for tax years 1988 through 1993, 1999, and 2000.

3. The claims included penalties for failure to timely file tax returns and failure to pay estimated taxes.

4. On October 7, 2005, the debtor objected to the claim asserting that (1) the secured claims "may not be properly perfected[,]" (2) the applicable statute of limitations period had lapsed, and (3) the claimed amount "is improper."

5. On October 28, 2005, the United States responded to the debtor's objection asserting that (1) the secured claims were based upon a properly recorded notice of federal tax lien; (2) debtor did not file tax returns for tax years 1988 through 1993 thus the Service calculated debtor's tax liabilities based upon third-party payer information and made assessments based upon defaulted statutory notices of deficiency; (3) debtor did not file tax returns for tax years 1999 and 2000 thus the claim is based upon estimates; and (4) the 10-year statute of limitations on collection has not yet lapsed.

6. On April 25, 2006, the bankruptcy court held the first of two hearings on debtor's objection and the United States' response thereto. During this hearing, the United States presented the testimony of an insolvency specialist from the Internal Revenue Service.

7. On May 16, 2006, the bankruptcy court held the second of two hearings on debtor's objection and the United States' response thereto. This time the debtor testified.

8. On May 25, 2006, the bankruptcy court issued an order denying the debtor's objection to the United States' amended claim and allowing the amended claim filed on February 7, 2005.

**STATEMENT OF THE FACTS**

In the late 1980s, Theodore Miles was an asbestos worker and pipe coverer. (TR2 4:15-20.)[1] During this time, Miles worked for the union and was sent out on different jobs across the county. (TR2 4:21-25.) He received W-2 statements from many employers, as many as 12 to 20 employers, each year during the late 1980s. (TR2 5:1-9; *see also* TR2 19:9-11.)

In 1985, Miles purchased a house located at 201 17th Street, SE, Washington, DC. (TR2 5:14-20, 11:12-13.) Due to his failure to pay his mortgage, the mortgage company foreclosed its interest in the house in 1994 or 1995. (TR2 5:21-6:4.) Miles provided employers with his mother's address, which was 901 North Carolina Avenue, SE, Washington, DC. (TR2 9:17-22, 15:2-10.) Miles does not recall whether he filed a change of address form with the Internal Revenue Service. (TR2 9:14-25.) According to the Service's records, the last known address in their records is the same address provided in the bankruptcy records. (TR1 13:17-14:3, 16:7-10.)

*Federal Tax Liabilities*

Miles did not file federal individual income tax returns for tax years 1988 through 2002.[2] (TR1 13:5-16, 26:24-27:6; Response to Objection to Claim ¶ 7, Ex. D.) Miles did not file a tax return in 1988 because he did not have his W-2 statements from employers. (TR2 6:23-7:4, 7:12-17, 8:18-25.) His niece threw his W-2 statements

[1] TR1 refers to the transcript of the hearing on April 25, 2006. TR2 refers to the transcript of the hearing on May 16, 2006. As of today's date, the April 25, 2006 transcript does not appear on the bankruptcy court's docket via PACER. If requested, undersigned counsel will file a copy of the transcript with this Court.

[2] Prior to 1988, Miles asserts that he filed his tax returns with the Internal Revenue Service and received refunds because his employer withheld sufficient funds as estimated payments. (TR2 6:9-23, 13:6-9, 13:24-14:11.) There is a potential that he had not properly reported all income for tax years 1985 and 1987. (TR2 11:18-13:4.) But the Service did not pursue an investigation. (TR2 11:23-12:3, 12:22-13:4.)

pertaining to tax year 1988 in the trash when she was cleaning his house. (TR2 6:23-7:4, 7:12-15; *see also* TR2 19:11-13.) He allegedly tried to obtain copies from the Internal Revenue Service but was told that the Service did not have them. (TR2 8:4-7.) He was unable to obtain copies from his employers because he did not remember the different contractors he worked for throughout the years. (TR2 8:18-25.) Miles normally opened a bank account any time he worked out of town so that he could cash his checks. (TR2 11:17-24.) Miles asserts, through his counsel's argument, that he did not file a federal individual income tax return for subsequent years because the Service told him that he had to file for the preceding year first.[3] (TR2 32:6-19.)

Because Miles failed to file tax returns, the Internal Revenue Service prepared returns based upon third-party payer information and made assessments based upon defaulted statutory notices of deficiency for tax years 1988 through 1993. (*See* TR1 26:9-27:13; Response to Objection to Claim ¶ 7, Ex. D.) Miles asserts that he never received the statutory notices of deficiency. (TR2 10:21-11:1.)

The Service included claims for the debtor's 1999 and 2000 federal individual income tax liabilities based upon estimates. The Service's computer system provided the estimated figures after reviewing the Service's records for third-party payer information, such as W-2s and Forms 1099, as well as withholding credits. (TR1 24:25-26:5.) The tax calculation was made after providing the debtor with one exemption. (TR1 25:7-12.)

In sum, Miles asserts that because he always paid his taxes, did not defraud the government, never evaded taxes, and believed that he could not file a return until he

[3]Miles started filing returns again in 2002. (TR2 16:3-6.) This conflicts with the Service's records which indicate that he did not file a tax return for the 2002 tax year. (TR1 11:18-23, 24:20-24.)

filed his 1988 return, the bankruptcy court should "have some mercy" and "grant [him] some funds out of [his inheritance] money." (TR2 13:12-23.) He asserts that the Internal Revenue Service "got more money anyway." (TR2 13:14-15.)

*Preparation of the Proof of Claim & Amended Proof of Claim*

The insolvency specialist from the Internal Revenue Service who prepared the claim testified as to how the proof of claim was prepared. (TR1 5:3-7:20, 19:8-23:1.) After a telephone call from debtor's attorney and a review of the bankruptcy schedules, the insolvency specialist prepared an amended proof of claim reducing the secured claim, which resulted in an increase to the unsecured general claim. (TR1 7:21-8:21.) Prior to filing the claim, the insolvency specialist reviewed the assessments to ensure that the statute of limitations on collection had not expired for any particular tax period. (TR1 9:24-10:5.) The secured claim arises from the fact that the Service filed a notice of federal tax lien, prior to the debtor's bankruptcy, with the Recorder of Deeds in Washington, D.C., with respect to debtor's unpaid federal tax liabilities for tax years 1988 through 1993. (TR1 8:22-9:23.) Because the Service filed the notice of federal tax lien in Washington, D.C. and, according to his schedules, debtor indicated that he had an interest in real property in Washington, D.C., the United States has a secured claim against debtor's property in Washington, D.C. (TR1 9:16-29.)

Also, in reviewing the Service's transcripts for the debtor's tax accounts, the insolvency specialist noted that there were penalties imposed for each year listed on the amended proof of claim. (TR1 10:6-20, Ex. D.) The penalties imposed were estimated tax penalties and the late filing (of tax returns) penalties. (TR1 11:3-8, Ex. D.) Debtor submitted an informal request for abatement of penalties asserting that reasonable cause existed to abate the failure to file returns penalties because he was a journeyman and lived in a number of states. (TR1 17:8-12, 19:4-6, 24:5-8, 35:2-9.) Debtor's counsel

was advised that the informal request for abatement of penalties was denied. (TR1 18:22-19:6, 24:5-8.)

*Bankruptcy Court's Findings of Fact and Conclusions of Law*

The bankruptcy court held that the debtor bears the burden of proof to establish reasonable cause for his failure to file tax returns to justify abatement of the failure to file penalties. (TR2 19:4-8.) While the bankruptcy court found debtor's testimony that his niece threw away his W-2 statements for the 1988 tax year credible, the bankruptcy court did not find debtor's assertion that the Service told him he could not file a return until he filed delinquent returns credible. (TR2 19:14-22.) The bankruptcy court found that debtor did not carry his burden of establishing reasonable cause to abate the penalties. (TR2 19:23-20:1; 20:22-24.)

The bankruptcy court also considered debtor's assertion that because he had always gotten a refund in the past, he was not concerned about filing returns since he thought he would not owe any taxes. (TR2 20:2-5.) The bankruptcy court rejected this argument because debtor failed to challenge the amount of tax claimed as unpaid by the Service. (TR2 20:5-6.) The bankruptcy court correctly held that the debtor bears the burden of proof to show an error in the assessments. (TR2 20:6-9, 17-22.) Debtor failed to provide any evidentiary support for his claims that he paid real estate taxes and mortgage interest such that he had sufficient deductions to eliminate any tax. (TR2 20:6-22.) The bankruptcy court held that the debtor did not carry his burden of showing that he had sufficient deductions to relieve him from an obligation of filing a federal individual income tax return. (TR2 20:17-22.)

**SUMMARY OF THE ARGUMENT**

The Supreme Court has clearly held that a taxpayer bears the burden to prove that the Commissioner's determinations of a taxpayer's liabilities is incorrect. It has

also clearly established that a taxpayer bears the heavy burden to establish that abatement of failure to file penalties is proper. The bankruptcy court correctly held that the debtor had the burden of proof. After establishing that the debtor had the burden of proof, the bankruptcy court held that the debtor did not meet his burden to establish that his failure to file federal individual income tax returns from 1988 through 1993, 1999, and 2000 was due to reasonable cause and not willful neglect. The bankruptcy court's determination is not clearly erroneous when the court considered all evidence presented by the debtor and was not persuaded that debtor was told by the Service told him he could not file returns until he filed delinquent returns.

## ARGUMENT[4]

### I. The bankruptcy court properly held that the debtor bears the burden of proof to establish that the proof of claim was incorrect, that he was entitled to an abatement of the failure to file a return penalties, and that he did not meet these burdens.

Contrary to debtor's assertions, the Supreme Court has made it clear that "the burden of proof on a tax claim in bankruptcy remains where the substantive law puts it." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 26 (2000). The Supreme Court has made it equally clear that the burden to establish that abatement of failure to file penalties is proper rests with the debtor. *See United States v. Boyle*, 469 U.S. 241, 245 (1985).

The proof of claim filed by the Internal Revenue Service is *prima facie* evidence of the debtor's unpaid federal tax liabilities. Fed. R. Bankr. P. 3001(f). The Supreme Court

---

[4]Debtor did not raise arguments related to his assertions that the statute of limitations expired and that the claim was improperly secured in his notice of appeal or his brief, but instead his counsel conceded the issues at the April 25, 2006 hearing. Debtor's counsel conceded that the liens were properly and timely filed. (TR1 31:5-6.) Debtor's counsel also conceded that debtor did not have W-2s to substantiate his claims, thus the issue was whether the debtor should be entitled to abatement of interest and penalties. (TR1 31:6-22, 38:10-14.) Debtor cannot now raise the arguments.

could not state in clearer terms that the burden of proof is on the taxpayer. *Helvering v. Taylor*, 293 U.S. 507, 515 (1935) ("Unquestionably the burden of proof is on the taxpayer to show that the commissioner's determination is invalid."); *accord Bull v. United States*, 295 U.S. 247, 260 (1935); *Welch v. Helvering*, 290 U.S. 111, 115 (1933); 26 U.S.C. § 7491. This is equally true with respect to penalties. *See* 26 U.S.C. § 6651(a)(1) (A penalty for failure to file a return is imposed "unless it is shown that such failure is due to reasonable cause and not due to willful neglect [.]"); *United States v. Boyle*, 469 U.S. at 245 ("[T]axpayer bears the heavy burden of proving both (1) that the failure did not result from "willful neglect," and (2) that the failure was "due to reasonable cause." (citing 26 U.S.C. § 6651(a)(1)); *Del Commercial Properties, Inc. v. Commissioner*, 251 F.3d 210, 217 (D.C. Cir. 2001); *Eastern Investment Corp. v. United States*, 49 F.3d 651, 655 (10th Cir. 1995); *Nesse v. Internal Revenue Service (In re Blair Temporaries & Staffing, Inc.)*, 305 B.R. 645, 647-48 (D. Md. 2004.). If the taxpayer fails to meet either of these tests, the failure to file penalty is mandatory. *Cf. Fleming v. United States*, 648 F.2d 1122, 1124 (7th Cir. 1981). Accordingly, debtor had the burden of coming forward with some competent evidence to dispute the claim and the bankruptcy court correctly held that he did not meet this burden.

Debtor's reliance upon *In re Greenspan, Cebollero v. Commissioner,* and *Higginbotham v. United States* is misplaced. (Appellant Brief at 7-8.) The three cases do not address the situation presented in the present case. In the present case, debtor conceded that the liens were properly and timely filed and that he did not have evidence to support his claims that the amount of tax imposed was incorrect. (TR1 31:5-22, 28:10-14.) Debtor's only challenge was that he was entitled to abatement of the failure to file penalties. Thus, according to *Boyle*, debtor bears the heavy burden of establishing appropriateness of abatement of the failure to file penalties. Contrariwise

in *Greenspan*, *Cebollero*, and *Higginbotham*, the courts were faced with challenges to the validity of the tax assessed and not whether a penalty should be abated. Before reaching a determination as to the correct amount of tax owed, the courts noted that the Commissioner's determination may be set aside "if he can prove that it is 'arbitrary and excessive[.]'" *Cebollero v. Commissioner*, 967 F.2d 986, 990 (4th Cir. 1992); *see also Higginbotham v. United States*, 556 F.2d 1173, 1175 (4th Cir. 1977); *In re Greenspan*, 2002 Bankr. LEXIS 1507, *11 (Bankr. D. Md. 2002). Since the validity of the amount of tax owed is not at issue, the proper analysis is the one prescribed under *Boyle*.[5]

[5]Assuming *arguendo* debtor is challenging the amount of tax owed and such issue is properly before this Court, debtor still fails to meet his burden. Debtor did not dispute that he earned wages during the years listed on the proof of claim. He simply did not provide evidence as to what his wages were for those years. Debtor's self-serving statements, which could have been verified or disproved if he had retained and/or produced W-2 statements, bank statements, mortgage bills, and cancelled checks are insufficient as a matter of law to rebut the presumption of correctness afforded the commissioner's determination of liabilities. *See Liddy v. Commissioner*, 808 F.2d 312, 315 (4th Cir. 1986). Moreover, debtor failed to prove that the assessments are arbitrary or excessive when the assessments are based upon third-party payor information, such as W-2 statements and/or Form 1099s, filed with the Internal Revenue Service.

Debtor's reliance on *In re Greenspan* is misplaced for three reasons. First, it does not appear that the bankruptcy court considered the opinion in *Liddy v. Commissioner*. Second, the facts of this case are distinguishable from those presented in *Greenspan*. In *Greenspan*, the debtor testified that his license to practice law was revoked in 1988, thus he was unable to earn income. *In re Greenspan*, 2002 Bankr. LEXIS 1507, * 13-14. Based upon that testimony as well as the fact that the Internal Revenue Service did not identify the third-party payer, the Service's claim for unpaid federal tax liabilities for the 1988 tax year was disallowed. In the present case, debtor admitted that he earned income. He simply claims that his employers withheld sufficient funds from his wages such that he would not owe tax. Finally, in *Greenspan*, the bankruptcy court determined that because "[d]ebtor provided no evidence that the ... assessments [for the 1990 tax year] were inaccurate or wrongly assessed[,]" he failed to rebut the Commissioner's determination. *In re Greenspan*, 2002 Bankr. LEXIS 1507, * 15-17.

## II. The bankruptcy court correctly determined that debtor failed to show that the penalties should be abated.

### A. The bankruptcy court correctly determined that debtor failed to show that the failure to file penalties should be abated.

Individuals owing taxes must file a return. *See* 26 U.S.C. §§ 6011(a), 6012. This is a non-delegable duty. *See McMahan v. Commissioner*, 114 F.3d 366, 370 (2d Cir. 1997) (citing *Fleming v. United States*, 648 F.2d 1122, 1125 (7th Cir. 1981)); *Lillehei v. Commissioner*, 638 F.2d 65 (8th Cir. 1981); *see also United States v. Boyle*, 469 U.S. 241, 250-251 (1985) (In the context of the duty to file an estate tax return, the Supreme Court noted that "[t]he duty is fixed and clear; Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations."). For individual calendar-year taxpayers, returns must be filed by April 15 in the next year. 26 U.S.C. § 6072(a).[6] Taxpayers must also pay any tax owed at the time of filing. 26 U.S.C. § 6151.

If a taxpayer fails to adhere to these statutory deadlines, he is subject to penalties. Section 6651 imposes a penalty on taxpayers who fail to file required returns. 26 U.S.C. § 6651(a)(1). The prompt payment of taxes is imperative to the Government and the penalty statutes further that imperative. *See United States v. Boyle*, 469 U.S. 241, 249 (1985); *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938). By imposing these additions to tax liabilities for a taxpayer's failure to comply with statutory requirements, Congress sought to ensure timely filing of tax returns and timely payment of tax liabilities. *See In re Frederick Savage, Inc.*, 179 B.R. 342, 345 (Bankr. S.D. Fla. 1995) (citing *United States v. Boyle*, 469 U.S. 241, 245 (1985)). "The Government has millions of taxpayers to monitor, and our system of self-assessment in the initial calculation of a tax simply cannot work

---

[6] The Secretary may grant an extension of time for filing a return. 26 U.S.C. § 6081.

on any basis other than one of strict filing standards ... Prompt payment of taxes is imperative to the Government, which should not have to assume the burden of unnecessary ad hoc determinations." *Boyle*, 469 U.S. at 249.

Congress realized that there may be a limited set of circumstances in which a failure to file tax penalty assessment might be inappropriate. As stated above, Congress provided that the failure to file tax penalty is not applicable if the taxpayer shows that such failure is due to reasonable cause and not willful neglect. See 26 U.S.C. § 6651(a). The taxpayer bears the heavy burden of proving both (1) that the failure did not result from willful neglect and (2) that the failure was due to reasonable cause. *See Boyle*, 469 U.S. at 245; *Eastern Investment Corp. v. United States*, 49 F.3d 651, 655 (10th Cir. 1995). If the taxpayer fails to meet either of these tests, the penalties for failure to file, failure to pay, and failure to make employment tax deposits are mandatory. *Cf. Fleming v. United States*, 648 F.2d 1122, 1124 (7th Cir. 1981).

Willful neglect and reasonable cause are not defined under the Code. Willful neglect has been defined as "a conscious, intentional failure or reckless indifference." *Boyle*, 469 U.S. at 245. Reasonable cause usually exists when a taxpayer exercises "ordinary business care and prudence" in determining tax obligations, but is unable to comply with those obligations. *Boyle*, 469 U.S. at 246; 26 C.F.R. § 301.6651-1(c)(1); *see also* IRM 20.1.1.3.1.1.[7] "Congress obviously intended to make absence of fault a prerequisite to avoidance of the late-filing penalty." *Boyle*, 469 U.S. at 247, n. 4. Therefore, a taxpayer must prove that such failure "was the result neither of carelessness, reckless

[7] The Service has enumerated the following eight instances where reasonable cause exists so as to excuse the late filing of returns: (1) unavoidable postal delays; (2) the taxpayer's timely filing of a return with the wrong IRS office; (3) the taxpayer's reliance on the erroneous advice of an IRS officer or employee; (4) the death or serious illness of the taxpayer or a member of his immediate family; (5) the taxpayer's unavoidable absence; (6) destruction by casualty of the taxpayer's records or place of business; (7) failure of the IRS to furnish the taxpayer with the necessary forms in a timely fashion; and (8) the inability of an IRS representative to meet with the taxpayer when the taxpayer makes a timely visit to an IRS office in an attempt to secure information or aid in the preparation of a return. *See Boyle*, 469 U.S. at 24 n.6.

indifference, nor intentional failure." *Id.*

In this case, debtor's only stated facts in support of abatement of the failure to file penalty are (1) that his niece threw away his W-2 statements for the 1988 tax year, (2) that he was unable to get copies of those W-2 statements from the Internal Revenue Service, (3) that he could not recall who he worked for in 1988 so as to ask for copies from his employers, and (4) that he was told by the Internal Revenue Service that he could not file subsequent tax returns until he filed a tax return for the preceding year. The first three reasons relate to debtor's failure to file a tax return for the 1988 tax year and are insufficient to establish that his failure to file a return was due to reasonable cause and not willful neglect. Debtor is not relieved of the duty to file a return because he does not have the appropriate W-2 statements.[8] It is not an exercise of ordinary business care and prudence for a taxpayer to fail to maintain his W-2 statements, bank statements which may assist in identifying income receipts and payment of expenses, and documents identifying employers for any given period. More importantly, it is not an exercise of ordinary business care and prudence to fail to file a return simply because you do not have W-2 statements for one year.

Debtor's only proffered reason for his failure to file returns for tax years 1989 through 1993, 1999, and 2000, is that he was told by the Internal Revenue Service that he could not file a return until he filed a return for the preceding year. There is a clear statutory duty upon a taxpayer to determine whether he must file a return and when the return must be filed. Moreover, the bankruptcy court did not find his testimony credible. Thus, the bankruptcy court did not commit clear error in determining that

[8] *See* "Missing Your Form W-2?," IRS Tax Tip 2006-22 (available at http://www.irs.gov/newsroom/article/0,,id=10647,00.html) ("If you misplaced your W-2, contact your employer. ... You still must file your tax return on time even if you do not receive your Form W-2. If you cannot get a W-2 by the tax-filing deadline, you may use Form 4852, Substitute for Form W-2, Wage and Tax Statement [.]"); *c.f. Gad v. Barnhart*, 2004 WL 1752369, * 5 (E.D.N.Y. 2004).

debtor failed to meet his heavy burden of establishing that his failure to file tax returns for 1988 through 1993, 1999, and 2000 was due to reasonable cause and not willful neglect.

**B. Debtor did not seek relief from the estimated tax penalties.**

If a taxpayer failed to make sufficient estimated tax payments, he is subject to an estimated tax penalty. 26 U.S.C. § 6654(a). Congress provided a very limited set of circumstances in which the estimated tax penalty would either not be imposed or waived. 26 U.S.C. § 6654(e). The only potentially applicable situation is described in 26 U.S.C. § 6654(e)(3)(A) which provides that the estimated tax penalty will not be imposed "to the extent the Secretary determines that by reason of casualty, disaster, or other unusual circumstances the imposition of such addition to tax would be against equity and good conscience." 26 U.S.C. § 6654(e)(3)(A).[9] Reasonable cause is not a defense for the estimated tax penalty. *See Wesley v. United States*, 369 F.Supp.2d 1328, 1334 (N.D. Fla. 2005).

Debtor neither argued for nor presented evidence to support a waiver of this penalty. Thus, he is foreclosed from arguing it now. Even if he is permitted to argue for waiver of the penalty here, debtor failed to provide any evidence demonstrating that "by reason of casualty, disaster, or other unusual circumstances the imposition [of the tax] would be against equity and good conscience." Debtor did not withhold sufficient funds from his wages throughout the year to meet his tax obligations or make quarterly installment payments. Thus, imposition of the estimated tax penalty is mandatory.

[9]IRM 20.1.3.4.1.2 provides a discussion of the types of situations under 26 U.S.C. § 6654(e)(3)(A) in which waiver may be appropriate and situations in which waiver is not appropriate.

## III. Debtor failed to identify a constitutional due process violation.

Debtor informally asked the Service to abate the penalties.[10] The Service rejected his request. Because the Service did not provide him with a written letter rejecting his request, he asserts there was a violation of due process and the entire claim should be disallowed.[11] Debtor's argument fails primarily for two reasons.

First, the Service did notify debtor's counsel that his request for abatement of the failure to file penalty was rejected. Debtor's counsel does not dispute this. As has been repeatedly stated, internal operating procedures of the Internal Revenue Service, including the internal revenue manual, do not confer substantive rights or causes of action on taxpayers. *See Oxford Capital Corp. v. United States*, 211 F.3d 280, 286 n.3 (4th Cir. 2000).[12]

Second, debtor's argument overlooks the obvious – there was no constitutional due process violation. He did not identify a constitutional right that was violated. Also, he ignores the fact that he received a judicial determination as to whether the failure to file penalties should be abated.

---

[10]There was no evidence submitted by the debtor as to the form of the request, identification of debtor's supporting arguments, and identification of substantiating documentary evidence.

[11]At best, the only relief debtor should reasonably anticipate receiving if the Court agreed with his argument is relief from the penalties.

[12]Debtor's reliance on *Oxford Capital Corp. v. United States* for his assertion that the claim should be disallowed because of an alleged lack of due process of law is misplaced. In *Oxford Capital Corp.*, the court noted that the Internal Revenue Manual generally does not provide a cause of action to taxpayers, but also noted that internal operating procedures intended to protect a citizen's constitutional rights can establish a cause of action. *See Oxford Capital Corp. v. United States*, 211 F.3d 280, 286 n. 3 (4th Cir. 2000). In *Oxford Capital Corp.*, the court was faced with a levy on a taxpayer's bank accounts for his unpaid federal tax obligations. 211 F.3d 280. Further, the court did not address whether failure to follow a provision of the Internal Revenue Manual rendered a levy *per se* wrongful under 26 U.S.C. § 7426. *See id.* The specific provision in the manual required Service employees to seek advice and written direction from district counsel prior to filing a notice of federal tax lien in the name of an alter ego as to the need for a supplemental assessment and a new notice and demand. *See id.* In the present case, the only issue is whether there was a constitutional violation if the Service did not provide a written letter rejecting debtor's request for abatement.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court affirm the decision of the bankruptcy court to deny the debtor's objection to the claim filed by the Internal Revenue Service and allow the amended proof of claim.

DATED: September 19, 2006.

Respectfully submitted,

/s/ Jennifer L. Vozne
JENNIFER L. VOZNE
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6555
Facsimile: (202) 514-6866

OF COUNSEL

KENNETH L. WAINSTEIN
United States Attorney

**CERTIFICATE OF SERVICE**

IT IS CERTIFIED that service of the foregoing APPELLEE INTERNAL REVENUE SERVICE'S BRIEF has been made this 19th day of September, 2006, by mailing copies thereof, postage prepaid, addressed to:

Janet Nesse
Stinson Morrison Hecker, LLP
1150 18th Street, NW
Suite 800
Washington, DC 20036-3816

/s/ Jennifer L. Vozne
_____________________________
JENNIFER L. VOZNE